Filed 4/30/14  In re Alize K. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re ALIZE K. et al., Persons Coming Under the Juvenile Court Law. | B250814 <br><br> (Los Angeles County Super. Ct. No. CK81586) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> JEANNA H., <br><br> Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Honorable Jacqueline Lewis, Referee.  Affirmed.

Kimberly A. Knill, under appointment by the Court of Appeal, for Defendant and Appellant.

Tarkian & Associates and Arezoo Pichvai, for Plaintiff and Respondent.

_____

## INTRODUCTION

Jeanna H. (mother) appeals from an order to retain dependency jurisdiction over her daughter, Alize K. (age 13), and her sons, Armani K. (age 11) and Giovanni Y. (age 1), following a contested status review hearing pursuant to Welfare and Institutions Code[1] section 364.  We affirm.

## FACTS AND PROCEDURAL BACKGROUND

Because resolution of this appeal turns upon the existence of substantial evidence supporting the juvenile court's order, we state the facts in the manner most favorable to the court's determination, resolving all evidentiary conflicts in favor of the court's findings.  (*In re Heather A*. (1996) 52 Cal.App.4th 183, 193; *In re N. S.* (2002) 97 Cal.App.4th 167, 172.)

This is not mother's first encounter with the dependency system.  In 1997, child protective services in Wisconsin removed mother's oldest daughter, Mercedes H., due to neglect when Mercedes was nine months old.  Mercedes was placed with her maternal grandparents, who eventually became the child's legal guardians.  In 2001, Wisconsin officials also removed Alize from mother's care and placed her with the maternal grandparents.  Mother successfully reunified with Alize in 2004, and the case was terminated in 2005.  In 2007, mother and the children moved from Wisconsin to Los Angeles.

The Los Angeles County Department of Children and Family Services (Department) initiated the current case in May 2012, after receiving a report that police were called to respond to a domestic violence incident involving mother's boyfriend, Jackie Y., at mother's apartment.  Jackie allegedly ripped the apartment door off its hinges, entered the apartment, and broke through another door, while the children were in the home.  The reporter also stated that police had responded to mother's apartment 11 different times in the previous nine months regarding some type of domestic

---

[1]     Statutory references are to the Welfare and Institutions Code.

disturbance.  At the time, mother was in her third trimester of pregnancy with Jackie's child.

After investigating the incident, the Department filed a dependency petition on behalf of Alize and Armani, alleging that (1) mother and her boyfriend, Jackie, had a history of engaging in violent altercations in the children's presence; (2) on one occasion Jackie broke a door to the children's home and mother failed to protect the children; (3) mother allowed Jackie to frequent the children's home and have unlimited access to the children while under the influence of illicit drugs; and (4) mother physically abused Armani, causing him unreasonable pain and suffering.

On May 11, 2012, the Department located and detained Armani, but was unable to locate Alize.  Mother refused to disclose Alize's location, forcing the juvenile court to issue a protective custody warrant for the child and a no bail bench warrant for mother. On May 17, 2012, mother and Alize appeared in court.  At the hearing, the court received notification from tribal social services that Alize and Armani were eligible for membership in the Menominee Indian Tribe of Wisconsin.  The court found the Indian Child Welfare Act applied and that active efforts had been made to prevent the break-up of the Indian family, but those efforts had been unsuccessful.  The court recalled the warrants and detained the children in the Department's custody pending adjudication and disposition.

On June 30, 2012, mother gave birth to Giovanni.  Jackie is Giovanni's father. On July 3, 2012, the Department received a report that Giovanni was at risk of general neglect after the child was admitted to the hospital with a fever and dehydration.  In the course of investigating the report, the Department learned that Jackie had been to the hospital and had stayed the night during one of the visits.  When mother was interviewed about the contact with Jackie, she denied they were a couple, but admitted he had stayed with her at the hospital.  Mother became agitated, denied ever abusing her children, and blamed the Department for her current predicament.  Following further investigation, the Department took Giovanni into protective custody.

On July 10, 2012, the Department filed a dependency petition on behalf of Giovanni, asserting the same allegations concerning the violent altercations between mother and Jackie, mother's physical abuse of Armani, and Jackie's use of illicit substances. The juvenile court ordered Giovanni detained in foster care.

On September 24, 2012, the juvenile court sustained the petitions under section 300, subdivisions (b) and (j), and continued the matter for a disposition hearing.

The Department's disposition report indicated mother's visits with the children were generally positive; however, there were instances in which mother discussed the court case with Alize and Armani, upsetting the children. When mother was advised that discussing the case with the children caused them undue stress and could jeopardize reunification, mother became defiant and complained that her children had been " 'illegally taken from her home.' " Mother's former therapist reported that mother had a pattern of cutting off from service providers when she felt betrayed.

The Department also submitted a report indicating mother failed to complete an alcohol rehabilitation program after a drunk driving conviction in 2011. Mother previously represented that she completed a program through the CLARE Foundation, but when the program counselor was contacted, he denied mother's claim and transmitted a report showing mother was terminated from the program after repeated attendance violations.

Notwithstanding the generally positive nature of mother's visits and her apparent progress on her substance abuse and domestic violence issues, the Department did not recommend releasing the children to mother's custody.

In advance of the disposition hearing, the Menominee Indian Tribe provided a report recommending immediate return of the children to mother's physical custody. The report also recommended that mother and the children continue to participate in the court ordered services, including parenting education and domestic violence counseling for mother.

On November 26, 2012, the court held the contested disposition hearing. The court ordered the children released to mother's custody with wraparound services in place. Mother was ordered to participate in counseling as directed by the Department, including individual counseling, domestic violence group support, and a parenting class. Mother also was ordered to attend a 12-step alcoholics anonymous program three times per week. Additionally, mother signed a court case plan in which she agreed to participate in a 52-week child abuse prevention program.

In advance of the section 364 status review hearing, the Department reported that mother was only in partial compliance with the court's order and case plan. The wraparound team met with the family every other week and reported the children were making some progress, but that progress had been hindered due to mother's failure to follow through with team strategies and the lack of natural supports. Mother stated the services did not match her needs and questioned why she and her family were required to participate. The team recommended extended services through the summer.

Mother was enrolled in a substance abuse, domestic violence counseling and parenting program through Crystal Hope Medical Services (Crystal Hope), but had attended only six weeks of individual counseling and 23 weeks for substance abuse. Crystal Hope did not have a 12-step alcoholics anonymous program. Mother also had not enrolled in a 52-week child abuse prevention program, and Crystal Hope was not on the County of Los Angeles Probation Department's approved list for such programs. The counselor at Crystal Hope recommended that mother "complete a full year of treatment."

On June 27, 2013, the court held the contested section 364 status review hearing. The children's counsel joined the Department in recommending continued court supervision over the family. Among other things, counsel noted that mother had failed to enroll in a 52-week child abuse prevention program or a 12-step alcoholics anonymous program. The representative for the Menominee Indian Tribe agreed the recommendation for continued supervision appeared "appropriate."

5

The juvenile court determined the failure to participate regularly in the court ordered treatment programs constituted prima facie evidence that continued jurisdiction was necessary. The court stated it returned the children to mother's custody because it believed "it was safe to do so with intensive services in place. And while some of the services are ongoing, not all of them are." The court retained jurisdiction over the children and continued the hearing to August 23, 2013.[2] Mother appealed.

**DISCUSSION**

Section 364, subdivision (c) provides: "After hearing any evidence presented by the social worker, the parent, the guardian, or the child, the court shall determine whether continued supervision is necessary. The court shall terminate its jurisdiction unless the social worker or his or her department establishes by a preponderance of evidence that the conditions still exist which would justify initial assumption of jurisdiction under Section 300, or that those conditions are likely to exist if supervision is withdrawn. *Failure of the parent or guardian to participate regularly in any court ordered treatment program shall constitute prima facie evidence that the conditions which justified initial assumption of jurisdiction still exist and that continued supervision is necessary.*" (Italics added.)

We review the juvenile court's decision to retain jurisdiction under section 364 for substantial evidence. (See *In re N. S., supra,* 97 Cal.App.4th at p. 172.) In doing so, "we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." (*In re Heather A., supra,* 52 Cal.App.4th at p. 193.)

Mother contends "juvenile court oversight was no longer needed to keep her children safe," because "she had made substantial progress on her programs." To support the contention, mother cites evidence indicating the children were healthy and well cared

---

[2] Although briefing was completed after the date for the continued review hearing, the parties have not advised this court of any change in the status of this case.

for after they were returned to her custody.  Mother also cites conflicting evidence suggesting the Department's reports did not adequately represent her true level of compliance with the court ordered programs.  Nevertheless, mother acknowledges there is a "dispute" about whether she complied with the order to attend a 52-week child abuse prevention program, but argues this is refuted by "ample evidence" that she was attending a "parenting class."  In sum, mother argues the juvenile court erred by retaining jurisdiction in spite of evidence showing she "was in the process of going through all the required programs and had made substantial progress."

We acknowledge mother's commendable efforts to address the issues justifying dependency jurisdiction.  However, this court's role is not to second guess the juvenile court's judgment where its findings are supported by substantial evidence.  Section 364 expressly states that a parent's failure to participate regularly in any court ordered treatment program shall constitute prima facie evidence that continued dependency supervision is necessary.  Though mother takes issue with the inferences drawn by the juvenile court, she does not contend that she was in full compliance with the court ordered programs at the time of the status review hearing.  Notwithstanding her progress in those programs, her admitted failure to fully comply was sufficient to support the court's finding that continued supervision was necessary.[3]

---

[3]     Even setting aside mother's partial compliance with the court ordered programs, we still would find substantial evidence supporting the juvenile court's determination. Though it does not receive much attention from the parties in their briefs, we note the juvenile court also found continued supervision was warranted based on evidence of a recent potential domestic violence incident involving Giovanni's father, Jackie.  At the section 364 hearing, the court received into evidence a criminal restraining order against Jackie, dated February 19, 2013.  The incident prompting the order was not reported to the Department, and none of the evidence offered to obtain the order was presented at the hearing.  The date of the order and the fact it was issued by a criminal court raised serious concerns in the juvenile court's mind about the nature of the underlying incident, particularly in light of the sustained allegations concerning Jackie.  The court asked the Department to investigate the incident and provide information at the continued status review hearing.  This was reasonable given the domestic violence issues that initially justified jurisdiction.

## DISPOSITION

The juvenile court's order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KITCHING, J.

We concur:

KLEIN, P. J.

ALDRICH, J.